**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Honeywell International Incorporated, | No. CV-19-03730-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Forged Metals Incorporated, | |
| Defendant. | |

Pending before the Court is Defendant Forged Metals Incorporated's ("Forged Metals") Motion to Dismiss two of Plaintiff Honeywell International Incorporated's ("Honeywell") claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 13). On September 9, 2019, Honeywell filed its Response to Forged Metals' Motion to Dismiss. (Doc. 18). On September 16, 2019, Forged Metals replied. (Doc. 19). The Court now rules on the Motion.[1]

**I. FACTUAL BACKGROUND**

The following facts are either undisputed or recounted in the light most favorable to the non-moving party. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). In 2014, Honeywell ordered forgings from Forged Metals for a

---

[1] Honeywell's request for oral argument, (Doc. 18 at 1), is denied because the issues have been fully briefed and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Inv'rs Grp. v. Pac. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991); *Prison Legal News v. Ryan*, No. CV-15-02245-PHX-ROS, 2019 WL 1099882, at *1 n.l (D. Ariz. Mar. 8, 2019).

"T55" test compressor. (Doc. 1 at 1–2). Honeywell alleges that it provided Forged Metals with engineering drawings that instructed it to apply a particular heat treatment to the forgings. (*Id.* at 2). According to Honeywell, Forged Metals later asserted that it created the forgings in accordance with the drawings. (*Id.*). On June 9, 2017, Honeywell tested the compressor with the forgings supplied by Forged Metals. (*Id.* at 3). In the process, Honeywell claims the growth compressor rig failed and damaged the attached equipment. (*Id.*). Honeywell asserts that Forged Metals caused this failure because it did not adequately strengthen the forgings with the appropriate heat treatment as instructed by Honeywell's drawings. (*Id.*). Honeywell now seeks damages and alleges breach of contract, breach of express warranty, breach of implied warranty, and, at issue here, two tort claims: one for "falsely certif[ying] that the forgings complied with Honeywell's specifications" and the other for "negligen[ce] in misreading the specifications provided by Honeywell . . . [and for] providing forgings that were not appropriate for their intended use." (*Id.* at 3–6). Forged Metals moves to dismiss those claims under the economic loss doctrine or, alternatively, it moves to dismiss the negligent misrepresentation claim for failure to state a plausible cause of action. (Doc. 13 at 1).

## II. LEGAL STANDARD

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal for failure to state a claim "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir.), *cert. denied*, 139 S. Ct. 640 (2018). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). All facts are read in the light most favorable to the non-moving party. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

# III. ANALYSIS

## A. Choice of Law Dispute

The parties debate whether the General Purchase Order Provision that requires New York law to govern "[t]he construction, interpretation and performance" of the agreement and "all transactions" under the agreement, (Doc. 19-1 at 21 (§ 30.1)), also applies to Honeywell's tort claims. Forged Metals argues that this choice of law provision applies to Honeywell's tort claims because these claims "depend on interpretation of the parties' contract." (Doc. 13 at 7). Honeywell responds that resolution of its tort claims does not depend on "interpretation of a traditional contract," and thus the choice of law provision does not apply. (Doc. 18 at 2–3).

"Claims arising in tort are not ordinarily controlled by a contractual choice of law provision . . . [but] are decided according to the law of the forum state." *Winsor v. Glasswerks PHX, L.L.C.*, 63 P.3d 1040, 1043 ¶ 9 (Ariz. Ct. App. 2003) (quoting *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992)); *see also Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) ("When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law."). However, under Arizona law, "contractual choice of law provisions may apply to tort claims [when] . . . 'resolution of th[ose] claims relates to interpretation of the contract.'" *Winsor*, 63 P.3d at 1044 ¶ 10 (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988)). In such a case, the tort claims cannot "be adjudicated without analyzing whether the parties were in compliance with the contract." *Id.* (quoting *Manetti-Farrow, Inc.*, 858 F.2d at 514).

Honeywell's tort claims rely on contract interpretation, and thus, New York law applies pursuant to the parties' contract. Honeywell states in its Complaint that "[t]he purchase orders for the forgings incorporate [the] General Purchase Order Provisions ('GPOPs') by reference." (Doc. 1 at 2). And the General Purchase Order Provisions explicitly define a purchase order as "an order issued by Honeywell for the purchase of Goods, *together with the specifications, drawings, terms and conditions, or other*

*documents referred to, attached to, or incorporated by reference* on the face of [the] Purchase Order." (Doc. 19-1 at 2 (§ 1) (emphasis added)). Moreover, Honeywell alleges that "[e]ach purchase order incorporated the drawing for that forging." (Doc. 1 at 4). In fact, this allegation is the basis of its breach of contract cause of action. (*See id.*). Based on Honeywell's allegations, solely for purposes of deciding Forged Metals' Motion to Dismiss (Doc. 13), the Court concludes that certain specifications relating to heat treatment were incorporated into the parties' contract.

Consequently, the allegations in the Complaint indicate that the basis of Honeywell's tort claims depends on contract interpretation. Honeywell alleges, for purposes of its negligent misrepresentation tort claim, that "Forged Metals falsely certified that the forgings complied with Honeywell's specifications." (Doc. 1 at 6). Honeywell alleges, for purposes of its negligence tort claim, that "Forged Metals was negligent in misreading the specifications provided by Honeywell." (*Id.*). Thus, based on Honeywell's allegations, its tort claims cannot be resolved without deciphering what the contract's specifications required of Forged Metals. In fact, it appears Honeywell does not dispute that the drawings and specifications were incorporated into the parties' contract, but rather Honeywell claims that interpretation of what the drawings and specifications require is not "traditional" contract interpretation, and thus the contract's choice of law provision does not apply. (Doc. 18 at 2–3). Honeywell cites no authority for this assertion, and the Court is not aware of any Arizona law that draws a distinction based on the *traditionality* of the required contract interpretation. Because Honeywell's tort claims cannot "be adjudicated without analyzing whether the parties were in compliance with the contract," the Court will enforce the parties' choice of law provision, which requires the Court to apply New York law. *See Winsor*, 63 P.3d at 1044 ¶ 10 (citation omitted).

**B.     Economic Loss Doctrine**

The Court must next decide whether, under New York law, Honeywell seeks recovery in tort for economic harms already fully recoverable by contract. Forged Metals

argues that Honeywell's tort claims are barred by the economic loss doctrine because Honeywell's tort claims are based on a failure to perform the duties imposed by the parties' contract. (Doc. 13 at 7–10).

1.  **New York Law**

New York's economic loss doctrine bars tort recovery for damage to property that is "the subject of [a] contract" so long as there are no allegations relating to personal injury. *Weiss v. Polymer Plastics Corp.*, 802 N.Y.S.2d 174, 175 (App. Div. 2005); *see also Bristol-Myers Squibb, Indus. Div. v. Delta Star, Inc.*, 620 N.Y.S.2d 196, 198–99 (App. Div. 1994) ("[D]amages arising from the failure of the bargained-for consideration to meet the expectations of the parties are recoverable in contract, not tort."). The doctrine is premised on the fact that economic loss entails losing part of a bargain, so courts must uphold contractual remedies that the parties have already negotiated. *See Bristol-Myers*, 620 N.Y.S.2d at 198–99. New York's economic loss doctrine thus bars torts claims when the product at issue caused no damages aside from failing to achieve a contractual purpose. *See Bocre Leasing Corp. v. Gen. Motors Corp. (Allison Gas Turbine Div.)*, 645 N.E.2d 1195, 1199 (N.Y. 1995); *cf. Hodgson, Russ, Andrews, Woods & Goodyear, LLP v. Isolatek Int'l Corp.*, 752 N.Y.S.2d 767, 769 (App. Div. 2002). "In determining whether the economic loss doctrine applies, a court should consider the nature of the defect, the injury, the manner in which the injury occurred, and the damages sought." *Hodgson*, 752 N.Y.S.2d at 769.

New York's economic loss doctrine does not bar claims that a product did perform as expected but still caused damages. *Id.* (allowing tort recovery for damage due to product defect that was "not the result of the failure of the product to perform its intended purpose"). Thus, plaintiffs may seek tort recovery for products that function as contracted but have unanticipated dangers or defects. *Id.* In contrast, "defects related to the quality of the product, e.g., product performance, go to the expectancy of the parties (loss of bargain) and are not recoverable in tort." *Hemming v. Certainteed Corp.*, 468 N.Y.S.2d 789, 790 (App. Div. 1983), *cited in Praxair, Inc. v. Gen. Insulation Co.*, 611 F. Supp. 2d

318, 326 (W.D.N.Y. 2009); *see also Weiss*, 802 N.Y.S.2d at 175–76 (holding that economic loss doctrine applied where tort claims were based on the failure of a product that was "the subject of the contract"). As the New York Court of Appeals has said, "where the claims at issue are, fundamentally and in all relevant respects, essentially contractual, product-failure controversies[,] [t]ort law is not the answer." *Bocre*, 645 N.E.2d at 1199.

Additionally, New York's economic loss doctrine does not bar tort recovery for damage to other property. *Elec. Waste Recycling Grp., Ltd. v. Andela Tool & Mach., Inc.*, 968 N.Y.S.2d 765, 767 (App. Div. 2013). New York courts have not, however, extended the meaning of other property to include the systems housing a defective product. *Progressive Ins. v. Ford Motor Co.*, 790 N.Y.S.2d 358, 360 (Dist. Ct. 2004) (holding that a defective electrical part that set fire to the vehicle containing it did not damage "other property"); *see Bocre*, 645 N.E.2d at 1196, 1199 (concluding that the economic loss doctrine applied to tort claims for "cost of repairs and lost profits" resulting from an engine's failure and the damage it caused to the helicopter housing it); *see also Landtek Grp., Inc. v. N. Am. Specialty Flooring, Inc.*, No. CV141095SJFAKT, 2016 WL 11264722, at *18 (E.D.N.Y. Aug. 12, 2016) ("[C]ourts have generally held that 'other property' does not include 'damage caused to a unit or system by a defective component.'"), *adopted*, No. 14CV1095SJFAKT, 2016 WL 8671839 (E.D.N.Y. Sept. 16, 2016). Otherwise, allowing the "over-parsing" of mechanical devices into a collection of parts "would represent an undue expansion of tort law into an area traditionally reserved for contract and warranty." *Trump Int'l Hotel & Tower v. Carrier Corp.*, 524 F. Supp. 2d 302, 312 (S.D.N.Y. 2007).

### 2. Analysis

Honeywell's tort claims are barred by the economic loss doctrine. Honeywell improperly seeks tort recovery for pure contractual violations, and Honeywell does not allege any damage to other property.

Honeywell's tort claims are based on the duties imposed by the parties' contract. Specifically, the gravamen of Honeywell's tort claims is that Forged Metals failed to perform according to the contract's specifications. (*See* Doc. 1 at 6). Thus, Honeywell's tort claims are "properly characterized as being for 'economic loss' due to product failure" just like the tort claim in *Weiss*. See 802 N.Y.S.2d at 176. Moreover, the failure of the forgings differs from the damages in *Hodgson*, which were "not the result of the failure of the product to perform its intended purpose." *See* 752 N.Y.S.2d at 769. Nowhere does Honeywell claim that the forgings performed as contractually intended. Instead, Honeywell alleges that "catastrophic failure occurred because certain forgings, which Forged Metals had provided, were not hardened pursuant to Honeywell's specifications"—specifications that Honeywell claims were incorporated into the parties' contract. (*Id.* at 1–2; *see also* Doc. 19-1 at 2 (§ 1)).[2] Therefore, Honeywell's tort claims are barred because they allege that Forged Metals failed to meet the parties' contractually-agreed-upon expectations. *See Hemming*, 468 N.Y.S.2d at 790.

Indeed, as noted above, New York law requires that a court review "the nature of the defect, the injury, the manner in which the injury occurred, and the damages sought" when assessing whether the economic loss doctrine applies. *Hodgson*, 752 N.Y.S.2d at 769. The nature of the defect and the manner in which the injury occurred relates to Forged Metals' alleged failure to make the forgings according to the contracted specifications. Honeywell alleges that this failure caused damage to the test compressor and the various equipment that was attached to it. (Doc. 1 at 3–4). Simply put, because the "claims at issue are, fundamentally and in all relevant respects, essentially contractual, product-failure controversies[,] [t]ort law is not the answer." *Bocre*, 645 N.E.2d at 1199.

---

[2] The Court again notes that it accepted as true for the purpose of deciding Forged Metals' Motion to Dismiss Honeywell's allegation that the specifications relating to heat treatment were incorporated into the parties' contract. However, should Forged Metals assert, during the course of litigation, that the heat treatment specifications were *not* incorporated by the parties' contract (or that there was no contract at all), Honeywell may move for reconsideration of this Order on Forged Metals' Motion to Dismiss (Doc. 13) within thirty days of such a contention.

Honeywell also fails to allege damage to other property recoverable in tort. Honeywell claims that "[t]he growth compressor rig failure caused significant damage to the T55 compressor rig and various equipment that was attached to the compressor," and Honeywell alleges that it "*incorporated* the forgings *into* the T55 test compressor." (Doc. 1 at 3 (emphasis added)). Under New York law, a defective component merges with any machinery fixed to or housing it. Honeywell integrated the forgings into the compressor—effectively making them one unit. Thus, as in both *Bocre* and *Progressive*, this integration precludes the Court from saying there was damage to other property that would allow tort recovery. Dividing the forgings from the attached equipment in order to raise claims in separate areas of law "would represent an undue expansion of tort law into an area traditionally reserved for contract and warranty." *See Trump*, 524 F. Supp. 2d at 312. In other words, the reasonable person expects that a defective component could harm the surrounding machinery, so, because the parties here have already contracted in anticipation of the forgings' performance, they have necessarily contracted for damage to the equipment attached to the forging. *See id.* at 311–13 (holding that a device integrated with absorption chiller "did not damage 'other property' when it malfunctioned and caused the absorption chiller to freeze").

However, Honeywell contends that "which items of damaged property were 'integrated' with the forgings" cannot be determined at this time. (*See* Doc. 18 at 6). But, Honeywell alleges that the forgings were incorporated into the T55 test compressor. (Doc. 1 at 3). And, Honeywell also claims that "[t]he growth compressor rig failure caused significant damage to the T55 compressor rig and various equipment that was attached to the compressor" and that it "had to rebuild the rig with new instruments and parts to replace the damaged components." (Doc. 1 at 3). In other words, according to Honeywell's allegations, all the property that was damaged was part of the test compressor that the alleged defective forgings were incorporated into. Hence, because Honeywell does not allege any facts showing damage to any property other than property

that was attached to the test compressor, there is no basis for tort recovery as to other property that was damaged as a result of the alleged failure of the forgings.[3]

As the economic loss doctrine bars both of Honeywell's tort claims, the Court need not evaluate whether Honeywell plausibly alleged its negligent misrepresentation claim. Accordingly, the Court grants Forged Metals' Motion to Dismiss as to Honeywell's tort claims alleged in counts four and five of the Complaint (Doc. 1).

///

///

///

///

///

///

---

[3] Honeywell argues that the economic loss doctrine does not bar its negligent misrepresentation claim because the parties were in privity of contract. (Doc. 18 at 8–9). A negligent misrepresentation claim may avoid the economic loss doctrine if the injured party alleges that it and the breaching party had a special relationship. *N.Y. Disaster Interfaith Servs. Inc. v. Council of Peoples Org., Inc.*, 94 N.Y.S.3d 539 (Sup. Ct. 2018) (table); *see also Nebraskaland, Inc. v. Sunoco, Inc.*, No. 10 CV 1091 RJD, 2011 WL 6131313, at *4 (E.D.N.Y. July 13, 2011), *adopted*, No. 10 CV 1091 RJD CLP, 2011 WL 6131298 (E.D.N.Y. Dec. 8, 2011); *cf. Alamo Contract Builders, Inc. v. CTF Hotel Co.*, 663 N.Y.S.2d 42, 43 (App. Div. 1997) (stating that a negligent misrepresentation claim cannot be alleged with a breach of contract claim "unless a special relationship exists between the parties, and the alleged misrepresentation concerns a matter which is extraneous to the contract itself"). Honeywell does not allege sufficient facts in support of its assertion that the parties had a special relationship. *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 778–82 (S.D.N.Y. 2011) (dismissing negligent misrepresentation claim at pleading stage because complaint lacked sufficient allegations to adequately plead a special relationship between the parties). Honeywell alleges that Forged Metals had "special knowledge" relating to whether the forgings complied with the agreement's specifications and that Forged Metals certified that the forgings complied with these specifications. (Doc. 1 at 6). These allegations are not sufficient to adequately plead a special relationship because the special relationship "must have existed prior to the very contractual relationship giving rise to the alleged wrong, and not as a result of it." *50-01 Realty LLC v. Brooklyn Fed. Sav. Bank*, 951 N.Y.S.2d 85 (Sup. Ct. 2012) (table) (citing *Emigrant Bank v. UBS Real Estate Sec., Inc.*, 854 N.Y.S.2d 39, 42 (App. Div. 2008)); *see also M & T Bank Corp. v. LaSalle Bank Nat'l Ass'n*, 852 F. Supp. 2d 324, 337 (W.D.N.Y. 2012) ("While New York courts have recognized that a business relationship can give rise to a special relationship between parties, this occurs only where 'the requisite high degree of dominance and reliance [] existed *prior* to the transaction giving rise to the alleged wrong, and not as a result of it.'" (alteration in original) (citation omitted)). Honeywell's allegations relate to conduct that occurred after the parties' contractual relationship began. Thus, Honeywell has failed to sufficiently plead the existence of a special relationship.

## IV. CONCLUSION

**IT IS ORDERED** that Defendant Forged Metals Incorporated's Motion to Dismiss (Doc. 13) counts four and five of Plaintiff Honeywell International Incorporated's Complaint (Doc. 1) is **GRANTED** pursuant to Rule 12(b)(6).[4]

Dated this 13th day of November, 2019.

James A. Teilborg
Senior United States District Judge

---

[4] Because other counts survive, the Clerk of Court shall not enter judgment at this time.