**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Honeywell International Incorporated, | No. CV-19-03730-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Forged Metals Incorporated, | |
| Defendant. | |

At issue is Defendant Forged Metals, Inc.'s ("Forged Metals") Motion for Summary Judgment (Doc. 90) and Motion In Limine to Exclude Plaintiff's Damages Spreadsheet and Related Evidence (Doc. 89), and Plaintiff Honeywell International Inc.'s ("Honeywell") Motion for Partial Summary Judgment on Forged Metals's affirmative defenses (Doc. 91). The Court now rules on these Motions.

## I.    FACTUAL BACKGROUND

The following facts are either undisputed or recounted in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

In 2014, Honeywell ordered forgings from Forged Metals for a "T55" test compressor. (Doc. 1 at 1–2).[1] Honeywell alleges that it provided Forged Metals with engineering drawings that instructed it to apply a particular heat treatment to the forgings. (*Id.* at 2). According to Honeywell, Forged Metals later asserted that it created the forgings in accordance with the drawings. (*Id.*). On June 9, 2017, Honeywell tested the test

---

[1] Record citations refer to the page numbers generated by the Court's electronic filing system.

compressor with the forgings supplied by Forged Metals. (*Id.* at 3). In the process, Honeywell claims the test compressor failed and damaged the attached equipment. (*Id.*). Honeywell asserts that Forged Metals caused this failure because it did not adequately strengthen the forgings with the appropriate heat treatment as instructed by Honeywell's drawings. (*Id.*).

Prior to delivery of the forgings, Forged Metals employee Jeff Herda emailed Honeywell on October 23, 2014 to seek clarity on whether the purchase orders required Forged Metals to precipitation heat treat the forgings. (Doc. 90-7 at 3). After internal discussion among Honeywell engineers, Honeywell engineer Brian Streich responded "[a]s for machining before or after the age heat treat, that is up to the vendor." (*Id.* at 2). The parties dispute what this email from Brian Streich means regarding which party was responsible for the precipitation heat treatment phase of the project, but Jeff Herda testified that he understood the email to mean that a different vendor was responsible for the precipitation step. (Herda Dep. at 80:14–181:3). In a January 25, 2015 email, Jeff Herda asked for additional clarification on how to prepare the forgings, stating that as of January 25, 2015, the forgings had not been precipitation treated. (Doc. 90-11 at 2). In February 2015, Forged Metals delivered the forgings to Honeywell. In Certificates of Conformance dated in January and February 2015 (hereinafter "COCs"), Forged Metals asserts that it both complied with the contract specifications and drawings and that the forgings were solution heat treated, not precipitation heat treated. (Doc. 90-14 at 2). Honeywell disputes receiving those documents prior to this lawsuit, but Forged Metals's asserts that it is its routine business practice to ship the COCs with the forgings. (Doc. 90 at 8–9).

Honeywell subsequently installed the forgings into the test compressor. On June 7 and 8, 2017, during experiments with the test compressor, the engineers noted unusual vibrations but continued the testing. (Doc. 90-13 at 5). On June 9, 2017, the test compressor failed. (*Id.*) Honeywell conducted investigations into the failure through September 2017 (Doc. 95 at 13), when Honeywell identified the forgings' improper heat treatment status as the cause (Doc. 90 at 14, 21 n.3). On September 15, 2017, Forged Metals received notice

of its alleged breach from Honeywell. (Doc. 90-24 at 1). On January 25, 2019, Honeywell sent Forged Metals a formal demand letter with a notice of breach of contract that gave rise to this suit. (Doc. 90-30 at 1).

The parties agree that both are bound by the General Purchase Order Provisions ("GPOPs") that are incorporated into the contract via the purchase order. (Doc. 1 at 2, ¶ 6).

## II.   PROCEDURAL BACKGROUND

On May 29, 2019, Honeywell filed suit against Forged Metals. (Doc. 1). Honeywell sought damages for breach of contract, breach of express and implied warranties, negligent misrepresentation, and negligence (*id.* at 4–6, ¶ 27–54), alleging that Forged Metals's failure to supply precipitation treated forgings in accordance with Honeywell's purchase orders led to the failure of its T-55 test compressor (*id.* at 3, ¶ 19–21).

On August 12, 2019, Forged Metals filed a Motion to Dismiss Counts IV (Negligent Misrepresentation) and V (Negligence) of Honeywell's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 13). On September 9, 2019, Honeywell filed its Response to Forged Metals's Motion to Dismiss. (Doc. 18). On September 16, 2019, Forged Metals replied. (Doc. 19). On November 13, 2019, this Court granted Forged Metals's Motion to Dismiss Honeywell's negligent misrepresentation and negligence claims because Honeywell did not adequately claim the non-economic damages required for recovery in tort. (Doc. 23 at 6, 9).

On November 27, 2019, Forged Metals filed an Answer admitting that it did not precipitation treat the forgings, while at the same time denying that the purchase orders required Forged Metals to precipitation treat the forgings. (Doc. 26 at 3, ¶ 14). Forged Metals's Answer also denies that Honeywell is entitled to judgment in its favor or to any of the relief it has demanded (*id.* at 5, ¶ 44) and sets forth six affirmative defenses, including: (1) Waiver; (2) Estoppel; (3) Failure to Mitigate Damages; (4) Collateral Source; (5) Set Off; and (6) Failure to State a Claim (*id.* at 6–7, ¶ 45–51). Fact discovery closed on December 7, 2020. (Doc. 28 at 2).

On January 25, 2021 Forged Metals filed both a Motion in Limine to Exclude

Honeywell's Damages Spreadsheet and Related Evidence (Doc. 89) and a Motion for Summary Judgment and Incorporated Memorandum of Law arguing: (1) Honeywell failed to provide Forged Metals with reasonable notice of its breach of contract claim; (2) Honeywell cannot recover consequential damages, or in the alternative, cannot prove such damages; and (3) Honeywell waived its breach of contract and warranty claims (Doc. 90). That same day, Honeywell filed a Motion for Partial Summary Judgment on Forged Metals's affirmative defenses of mitigation, waiver, and estoppel. (Doc. 91).

On February 8, 2021 Honeywell filed its Response to Forged Metals's Motion in Limine. (Doc. 93). On February 24, 2021, Honeywell filed its Response to Forged Metals's Motion for Summary Judgment (Doc. 95) and Forged Metals filed its Response to Honeywell's Motion for Partial Summary Judgment (Doc. 96) and a Motion for Leave to File Excess Pages in its Response to Plaintiff's Motion for Partial Summary Judgment (Doc. 94). On March 11, 2021, Forged Metals filed a Reply in Support of Its Motion for Summary Judgment (Doc. 98) and Honeywell filed a Reply in Support of Its Partial Motion for Summary Judgment (Doc. 99).

The Court heard oral argument on the parties' Motions on September 15, 2021. (Doc. 105).

### III.    FORGED METALS'S MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S DAMAGES SPREADSHEET AND RELATED EVIDENCE

Forged Metals seeks to preclude Honeywell from presenting its damages evidence, including a 2,696-page spreadsheet, based on Honeywell's alleged failure to produce or make available for inspection supporting documents in compliance with Federal Rule of Civil Procedure 26(a)(1). (Doc. 89 at 1–2). As Honeywell points out in its response, however, this case is governed by the Mandatory Initial Discovery Pilot (MIDP) project, as outlined in General Order 17-08, which expressly supersedes the requirements of Rule 26(a)(1). (Doc. 93 at 2 *citing* Gen. Order 17-08 at 1; *see also* Doc. 5). Nowhere in its Motion does Forged Metals argue that Honeywell's Mandatory Initial Disclosures or supplements thereof are deficient under the MIDP, nor does Forged Metals allege that it

followed General Order 17-08 or this Court's Scheduling Order in raising this dispute during fact discovery. (Doc. 5; Doc. 28 at 2–4). Instead, Forged Metals's Motion appears to rely solely on authority interpreting the damages computation requirements of Rule 26(a)(1). (Doc. 89 at 5). Thus, Forged Metals's arguments under Rule 26(a)(1) are inapposite to the extent that those arguments conflict with the MIDP, and this Court will look to the MIDP provisions outlined in General Order 17-08 in resolving this dispute.

While the MIDP and Rule 26(a)(1) contain similar requirements, including the disclosure of "a computation of each category of damages claimed," the MIDP differs from Rule 26(a)(1) in its treatment of "documents or other evidentiary material" supporting the disclosing party's damages computation.[2] Gen. Order 17-08 at 5. In particular, the MIDP only mandates that a party *describe* the documents or other evidentiary material underlying its damages computation—production or inspection of those documents is not compulsory. (*Id.* at 5 ("You may produce the documents or other evidentiary materials with your response instead of describing them.")). Indeed, the MIDP puts the onus on the receiving party to "request more detailed or thorough responses to these mandatory discovery requests if it believes the responses are deficient." (*Id.* at 5–6). The MIDP also allows the receiving party to "serve requests pursuant to Rule 34 to inspect, copy, test, or sample any or all of the listed or described items, to the extent not already produced in response to these mandatory discovery requests." (*Id.* at 6).

In addition to the MIDP, this proceeding is governed by this Court's Rule 16 Scheduling Order, which expressly outlines procedures for discovery disputes, including a joint request to the Court for a telephonic conference after a personal consultation between the parties to attempt to resolve the dispute. (Doc. 28 at 2–4). As noted in that Scheduling Order, "the Court will not entertain discovery disputes after the close of discovery barring extraordinary circumstances." (*Id.* at 2, fn. 2).

---

[2] Fed. R. Civ. Pro 26(a)(1) obligates the disclosing party to provide "a computation of each category of damages claimed." Fed. R. Civ. Pro. 26(a)(1)(A)(iii). Each disclosing party is also mandated to "***make available for inspection and copying***" the evidentiary material on which each damages computation is based, "including materials bearing on the nature and extent of the injuries suffered," pursuant to Rule 34. *Id.* (emphasis added).

In apparent accordance with the MIDP and this Court's Rule 16 Scheduling Order, Honeywell served its Mandatory Initial Disclosures on Forged Metals on December 27, 2019, including a summary of claimed damages. (Doc. 89 at 2). On October 21, 2020, Honeywell produced 1,170 purchase orders for parts that went into building and rebuilding the test compressor. (Doc. 93 at 3). On November 3, 2020, counsel for Forged Metals emailed Honeywell's counsel requesting identification of the documents underlying Honeywell's damages calculations in its Mandatory Initial Disclosures. (Doc. 89 at 3; *see also* Doc. 89-2 at 4). On the same day Honeywell replied, attaching its 2,696-page spreadsheet with 13,092 rows and 49 columns, allegedly exported from Honeywell's internal accounting system, SAP, and highlighting the upcoming 30(b)(6) deposition of the spreadsheet's custodian, Richard Koch. (Doc. 89 at 3; *see also* Doc. 89-2 at 4; *see also* Doc. 93 at 7). Within minutes, Forged Metals's counsel requested Honeywell to produce "any documents/invoices supporting this statement" in advance of Mr. Koch's deposition. (Doc. 89 at 3; *see also* Doc. 89-2 at 3). In response, Honeywell's counsel explained that "[t]he information in th[e] spreadsheet comes from Honeywell internal databases, not from the specific hard copy documents," and that Honeywell would not be producing any additional documents related to the spreadsheet other than the previously produced purchase orders. (Doc. 89 at 3; *see also* Doc. 89-2 at 3). On November 9, 2020, Honeywell served its First Supplemental Mandatory Disclosure Responses, including a revised summary of claimed damages and a list of relevant produced documents (i.e., purchase orders and the 2,696-page spreadsheet). (Doc. 89-1 at 7–8, 13–15). Honeywell also put forth its corporate representative Richard Koch as a 30(b)(6) witness as to Honeywell's damages claim, who explained that at least some of the entries in the excel spreadsheet, but not all of them, have underlying invoices. (Doc. 89 at 3). On November 11, 2020, Forged Metals deposed Mr. Koch on the spreadsheet and related damages claims. (*See generally* Doc. 93-1 at 1–42). Forged Metals then waited until November 24, 2020, less than two weeks before the close of fact discovery, to respond to Honeywell's November 3, 2020 email and reassert its entitlement to "backup invoices" and/or the documents underlying

- 6 -

the damages spreadsheet. (Doc. 89 at 4; *see also* Doc. 89-2 at 3). As noted by Honeywell, at no point did Forged Metals request a personal consultation with Honeywell to resolve this issue nor did Forged Metals seek this Court's interference before the close of fact discovery on December 7, 2020, as required by the Scheduling Order. (Doc. 93 at 11–12).

Forged Metals asserts that it will be disadvantaged by Honeywell's damages spreadsheet because it will be unable to challenge Honeywell's damages claims at trial without additional underlying evidence to verify the damages calculations. (Doc. 89 at 2). In its Response, Honeywell argues that the spreadsheet contains data exported directly from Honeywell's internal accounting system, SAP, and each line item in the spreadsheet does not necessarily have independent, supporting source material. (Doc. 93 at 1, 7). According to Honeywell, the spreadsheet itself is supporting documentation for the damages calculations contained in its First Supplemental Mandatory Initial Disclosures and in the last ten columns of the spreadsheet because each entry in the spreadsheet reflects a test compressor failure cost and the damages amount is a sum of these costs. (*Id.* at 3, 7). Honeywell's 30(b)(6) witness Mr. Koch stated that he used the information contained in the spreadsheet to determine the monetary damages resulting from the test compressor failure. (*Id.* at 3, *citing* 93-1 at 16, 18–20, Koch Dep. at 209:2–16, 211:25–213:23).

The Court is not persuaded by Forged Metals's arguments that it "will have no ability to check to see whether Honeywell's damages calculation is accurate" based on the entries in the spreadsheet alone. (Doc. 89 at 7). Honeywell's damages summary contained in its First Supplemental Mandatory Initial Disclosures is separate and distinct from the 2,696-page spreadsheet of cost data that Honeywell produced and relied on to compute its damages. It seems to this Court that the information contained in the spreadsheet itself is the underlying evidentiary material for Honeywell's damages calculations. Forged Metals has not explained how or why it cannot go through those same excel entries and calculate its own damages theory and compare that to Honeywell's. If one or more of the 13,092 rows or 39 columns relating to each cost entry indicates to Forged Metals that its inclusion in Mr. Koch's damages calculation is erroneous, it could have excluded those entries from

its own damages calculations and presented any refuting evidence.

Honeywell also notes that although Forged Metals claims that there are existing, unproduced purchase orders, Forged Metals has not yet identified any missing documents or entries in the spreadsheet that require additional support. (Doc. 93 at 7). It appears to be in dispute whether other documents supporting the spreadsheet exist. Other than the 1,170 purchase orders produced, Honeywell asserts that it does not know of any other underlying documents, and in any event, it does not need to produce those because the spreadsheet contains all of the information used in its damages calculations. (Doc. 93 at 7). Moreover, Forged Metals fails to identify for the Court any evidence that Honeywell has supporting documentation that it has failed to produce or make available. As Honeywell points out, the MIDP's damages disclosure provisions do not require that a party produce supporting documentation, only that the disclosing party describe any supporting documentation to the receiving party, and Forged Metals does not cite to any authority that would preempt the MIDP's provisions or require Honeywell to produce additional documentation of its damages theory. Gen. Order 17-08 at 5.  Parties to a suit are not required to create and produce documents that do not otherwise exist. *See* Fed. R. Civ. Pro Rule 34. Nevertheless, this Court finds that the produced spreadsheet and purchase orders constitute a good faith effort on Honeywell's part to abide by its disclosure requirements. *See State v. United Parcel Serv., Inc.*, 253 F. Supp. 3d 583, 686–87 (S.D.N.Y. 2017), aff'd, 942 F.3d 554 (2d Cir. 2019) (rejecting a motion to preclude damages evidence based on allegedly inadequate disclosure because "the Court views UPS as having made deliberate, tactical choices as to how it would approach plaintiffs' damages case: It drew careful lines to position this preclusion argument as best it could. In the end, the Court is not convinced that UPS lacked adequate pre-trial notice to counter plaintiffs' damages claim, nor is it convinced that UPS suffered any real prejudice.").

Moreover, Forged Metals had the opportunity to challenge Honeywell's spreadsheet during the deposition of Mr. Koch, as the custodian of the spreadsheet. During the deposition, Mr. Koch explained that the underlying evidence is contained in the

spreadsheet entries themselves, which were derived from the SAP database because each entry in the spreadsheet relates to the damages Honeywell seeks for the test compressor failure. (Doc. 93-1 at 12–13 (Koch Dep. at 205:14–206:15)). According to Honeywell, Forged Metals did not ask detailed questions about the entries in the spreadsheet, the produced purchase orders, or their relationship to Honeywell's damages theory. (Doc. 93 at 4). As such, Forged Metals cannot now complain that it did not get a fair chance to explore these issues during discovery. *See AFL Telecomms. LLC v. SurplusEQ.com Inc.*, 946 F. Supp. 2d 928, 945 (D. Ariz. 2013) ("Defendants reviewed the report and deposed the expert, and yet never sought the Court's assistance in obtaining more complete disclosures if any were needed. The Court will not preclude AFL's damages claims on the ground of non-disclosure.")

Accordingly, this Court DENIES Forged Metals's Motion in Limine, finding that Honeywell complied with the MIDP's mandatory initial disclosure requirements regarding its damages spreadsheet.[3] This Order is not an advance ruling on the admissibility of the evidence at trial. *See generally Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (non-movant's evidence offered in opposition to a motion for summary judgment need not be in an admissible form if the contents of evidence are admissible).

## IV.   LEGAL STANDARD FOR SUMMARY JUDGEMENT

### A. Choice of Law

Sitting in diversity jurisdiction, this Court will apply relevant state substantive law and federal procedural law. *Cty. Of Orange v. U.S. Dist. Ct. (In re Cty. Of Orange)*, 784 F.3d 520, 527 (9th Cir. 2015). As noted in the Order on the Motion to Dismiss, New York substantive law applies based on a choice of law provision in the GPOPs, which the parties agree is the contract governing this dispute. (Doc. 23 at 3–4).

### B. Summary Judgment

---

[3] Because the Court has determined that Honeywell's damages spreadsheet constitutes adequate supporting evidentiary material for its damages computation under the MIDP, the court need not address the admissibility of the spreadsheet as a business record under Federal Rule of Evidence 803(6) nor the parties' arguments for sanctions under Rule 37.

1    Summary judgment is appropriate when "the movant shows that there is no genuine

2    dispute as to any material fact and the movant is entitled to judgment as a matter of law."

3    Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must

4    support that assertion by ... citing to particular parts of materials in the record, including

5    depositions, documents, electronically stored information, affidavits, or declarations,

6    stipulations ... admissions, interrogatory answers, or other materials," or by "showing that

7    materials cited do not establish the absence or presence of a genuine dispute, or that an

8    adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A-B).

9    Thus, summary judgment is mandated "against a party who fails to make a showing

10   sufficient to establish the existence of an element essential to that party's case, and on

11   which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.

12   317, 322 (1986).

13   Initially, the movant bears the burden of demonstrating to the Court the basis for the

14   motion and the elements of the cause of action upon which the non-movant will be unable

15   to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-

16   movant to establish the existence of material fact. *Id.* A material fact is any factual issue

17   that may affect the outcome of the case under the governing substantive law. *Anderson v.*

18   *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant "must do more than simply

19   show that there is some metaphysical doubt as to the material facts" by "com[ing] forward

20   with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus.*

21   *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A

22   dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return

23   a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant's

24   bare assertions, standing alone, are insufficient to create a material issue of fact and defeat

25   a motion for summary judgment. *Id.* at 247–48. However, in the summary judgment

26   context, the Court construes all disputed facts in the light most favorable to the non-moving

27   party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

28   At the summary judgment stage, the Court's role is to determine whether there is a

1  genuine issue available for trial. There is no issue for trial unless there is sufficient evidence

2  in favor of the non-moving party for a jury to return a verdict for the non-moving party.

3  *Liberty Lobby, Inc.*, 477 U.S. at 249–50. "If the evidence is merely colorable, or is not

4  significantly probative, summary judgment may be granted." *Id.* (citations omitted).

5  **V.     FORGED METALS'S MOTION FOR SUMMARY JUDGMENT**

6         **A.  <u>Timely Notice of Breach of Contract</u>**

7         Forged Metals rightly notes that whether Forged Metals breached its contract with

8  Honeywell is a question of fact that cannot be decided on summary judgment. (Doc. 90 at

9  3). Instead, Forged Metals asserts that Honeywell is barred from any legal remedies as a

10  matter of law because Honeywell did not provide notice to Forged Metals within a

11  reasonable time after it discovered or should have discovered the purported breach of

12  contract.[4] (*Id.*) In response, Honeywell argues that it gave Forged Metals timely notice of

13  breach under the contract between the parties, which overrides the N.Y. U.C.C. provisions

14  on which Forged Metals's motion relies. (Doc. 95 at 3–4). Honeywell also notes that

15  Forged Metals's Timely Notice Defense is waived for failure to raise it in prior pleadings

16  and/or its discovery responses. (Doc. 95 at 17). The Court will first address the issue of

17  waiver, and then the merits of Forged Metals's Timely Notice Defense.[5]

18         **i.  Forged Metals's Waiver of its Timely Notice Defense**

19         Honeywell argues that General Order No. 17-08 preempts Forged Metals's Timely

20  Notice Defense because Forged Metals failed to raise it in its mandatory discovery

21  responses. (Doc. 95 at 17). Forged Metals responds that while it did not specifically use

22  the word "notice" in its disclosures, it adequately disclosed its legal theories under N.Y.

---

23  [4] Because Forged Metals is making two arguments related to the parties' purported notice,
24  for clarity, the Court will refer to Forged Metals's argument regarding Honeywell's lack
of timely notice of breach as its Timely Notice Defense, and its argument that Honeywell
had actual knowledge or notice of the forging's heat treatment status as early as late 2014
25  or early 2015 as its Actual Knowledge Theory.
26  [5] Notwithstanding this Court's Scheduling Order precluding the use of a statement of facts
and discouraging the use of broad citations to volumes of evidence in the record, Forged
27  Metals's Motion for Summary Judgment appears to have a de facto statement of facts
within its motion. The Court did not undertake the task of reviewing every single piece of
evidence that was cited to in Forged Metals's Motion. "Judges are not like pigs hunting for
28  truffles buried in briefs." *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). A party must
specifically point out the evidence that it wishes the court to consider.

1    U.C.C. § 2-607(3)(a), and even if the Court disagrees, a finding of waiver would be unjust.

2    (Doc. 98 at 11–13). The Court agrees with Forged Metals that it has not waived its Timely

3    Notice Defense.

4            General Order 17-08 requires the parties to provide "mandatory initial discovery

5    responses," and it "sets forth the categories of information that must be provided." Gen.

6    Order 17-08 at 2. Specifically, General Order 17-08 provides that the parties "must provide

7    relevant legal theories in response to paragraph B.4 below," which states, "[f]or each of

8    your claims and defenses, state the facts relevant to it and the legal theories upon which it

9    is based." *Id.* at 2, 5. In *IceMos*, this Court interpreted General Order 17-08's "relevant

10   legal theories language" to require that parties "fairly expose the facts and issues to be

11   litigated" within their initial discovery responses and provide "adequate notice of what

12   arguments will be made." *IceMOS tech. Corp. v. Omron Corp.*, CV-17-02575-PHX-JAT,

13   2020 WL 2527018, at *3 (D. Ariz. May 18, 2020).

14           Forged Metals's disclosures include: "Honeywell knew or should have known or

15   discovered" the condition of the forgings upon acceptance and laid out several paragraphs

16   disclosing why Forged Metals is entitled to win on that ground. (Doc. 98 at 11–12).

17   Moreover, Forged Metals mandatory discovery responses do disclose the facts underlying

18   its Timely Notice Defense, namely, that Honeywell had actual knowledge of the forgings

19   heat treatment status because Forged Metals informed Honeywell multiple times over the

20   two years prior to the test compressor failure that the forgings were not precipitation heat

21   treated. (*See*, *e.g.*, Doc. 95-1 at 44–46); *Cf. Ocean Garden Prods. Inc. v. Blessings Inc.*,

22   CV-18-00322-TUC-RM, 2018 WL 6133773, at *1 (D. Ariz. Nov. 21, 2018) ("[F]ailure to

23   disclose facts relevant to an asserted defense may result in that defense being stricken.").

24   Honeywell does not point to any facts that Forged Metals relies on in its Motion that are

25   not included in its disclosures. Thus, Forged Metals properly preserved its argument for

26   consideration on summary judgment.

27           Accordingly, the Court finds that Forged Metals adequately disclosed its Timely

28   Notice Defense, such that the Court may consider it on summary judgment.

### ii.  Honeywell's Purported Knowledge of the Forging Status

At the outset, Forged Metals argues that Honeywell had actual knowledge or notice of the actual heat treatment status of the forgings as early as late 2014 or early 2015 (Actual Knowledge Argument), and as a result, Honeywell did not notify Forged Metals of its breach of contract within a reasonable time (Timely Notice Defense). (Doc 90 at 16). The Court will address Honeywell's knowledge and notice based on the undisputed facts presented.

N.Y. U.C.C. § 1-202(a) states "[s]ubject to subsection (f), a person has 'notice' of a fact if the person: (1) has actual knowledge of it; (2) has received a notice or notification of it; or (3) from all the facts and circumstances known to the person at the time in question, has reason to know that it exists." § 1-202(d) continues: "[a] person 'notifies' or 'gives' a notice or notification to another person by taking such steps as may be reasonably required to inform the other person in ordinary course, whether or not the other person actually comes to know of it." Under § 1-202(e), again subject to subsection 1-202(f):

> [A] person 'receives' a notice or notification when: (1) it comes to that person's attention; or (2) it is duly delivered in a form reasonable under the circumstances at the place of business through which the contract was made or at another location held out by that person as the place for receipt of such communications."

Forged Metals sets out multiple theories to support its Actual Knowledge Argument.

### a.  Pre-delivery email communications between the parties

First, Forged Metals argues that the emails between Mr. Herda and various Honeywell employees prove that Honeywell was notified of the treatment status of the forgings prior to the test compressor failure. (Doc. 90 at 16–17). Honeywell refutes any such knowledge, arguing that it is not clear from the emails that Forged Metals did not intend to precipitation heat treat the forgings at a future time before delivery. (Doc. 95 at 12).

The contents and interpretation of the emails, including the subjective knowledge of those persons sending the emails are disputed material facts that go to what the parties knew at the time those emails were sent and what the parties thought the contract required

and any modifications to that contract by the email chain. On the one hand, Forged Metals argues that the emails prove that Honeywell's engineers told Forged Metals not to precipitation heat treat the forgings. (Doc. 90 at 16–17). On the other hand, Honeywell cites to deposition testimony to support its own interpretation that the email correspondence is inconclusive about whether Forged Metals would later precipitation heat treat the forgings. (Doc. 95 at 11–12.) As such, this Court finds there is a genuine dispute of fact that makes this issue inappropriate for summary judgment. *Liberty Lobby, Inc.*, 477 U.S. at 248.

### b. Honeywell's Purported Admission

Next, Forged Metals points to Honeywell's purported admission in its Complaint that it relied on Forged Metals's certification that it made the forgings in accordance with Honeywell's drawings as evidence of Honeywell's knowledge of the actual condition of the forgings as of delivery. (Doc. 90 at 2, 18). According to Forged Metals, Honeywell is thereby admitting that it received and reviewed the certifications of conformance and heat treatment certifications in their entirety and as a result, Honeywell had actual knowledge or notice prior to the test compressor failure that the forgings were not precipitation heat treated. (*Id.* at 18).

Honeywell's response is two-fold: (1) Honeywell asserts that it properly amended its Complaint and retracted any erroneous judicial admissions through its subsequent mandatory disclosures and its Motion for Partial Summary Judgment; (2) or in the alternative, it denies that its statements are judicial admissions of its actual knowledge of the forging heat treatment status altogether. (Doc. 95 at 14–15).

In its Reply, Forged Metals argues that Honeywell's explanation for amending its pleading error is not credible, it cannot disavow facts that it relied on as the basis for relief in its Complaint that it also asserted in its Response to Forged Metals's Motion to Dismiss, and that it is reasonable to infer that Honeywell read and understood the contents of the COC when it chose to rely on it, as stated in the Complaint. (Doc. 98 at 4–6).

Generally, judicial admissions are binding on the parties and the court. *Am. Title*

*Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *Id.* "Where, however, the party making an ostensible judicial admission explains the error in a subsequent pleading or by amendment, the trial court must accord the explanation due weight. *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859–60 (9th Cir. 1995).

In its Complaint, Honeywell alleged that "Forged Metals certified that it had made the forgings in accordance with Honeywell's drawings" and "Honeywell relied on Forged Metals' certification and incorporated the forgings into the T55 test compressor." (Doc. 1 at 2). It is undisputed that Honeywell is referring to the COC that Forged Metals alleges it sent to Honeywell upon delivery of the forgings. (Doc 90-14 at 2.) The parties also do not dispute that the document states both that "the forgings were made in accordance with the drawings" and designates the heat treatment status of the forgings as "solution heat treat." (Doc. 90-14 at 2).

The document at issue has inconsistent statements within it; one statement asserting compliance with the contract (as noted herein, there is a disputed issue of fact as to what the contract requires), and another that, according to Forged Metals, proves that it disclosed it did something different than what the contract allegedly requires. (*See* Doc. 90-14 at 2). Because the document itself is internally inconsistent as to the heat treatment condition of the forgings, there is a disputed material fact for the jury as to whether this document put Honeywell on notice that Forged Metals did not supply precipitation heat treated forgings. Any request to deem this judicial admission when it is internally inconsistent is denied because the Court cannot select between these conflicting sentences nor require Honeywell to be bound by both of them.[6] *Ramirez v. City of Phoenix*, CV-12-00639-PHX-JWS, 2013

---

[6] The Court notes that Honeywell now disputes whether it received the COC at all, but that is immaterial to the fact that even if it received it, there is a disputed issue of fact within it as to what it is certifying with respect to the forgings and the contract. In any event, Honeywell has further developed its factual basis and legal theories regarding its claims against Forged Metals and Forged Metals has not argued that Honeywell did not comply with General Order 17-08 in disclosing that information to Forged Metals. Honeywell's Response and Motion for Partial Summary Judgment are consistent with its disclosures.

WL 474361, at *4 (D. Ariz. Feb. 7, 2013) ("To qualify as a judicial admission, the admission must be deliberate, clear, and unequivocal.").

### c.  Effectiveness of Notice under U.C.C. 1-202

Forged Metals next argues that regardless of whether Honeywell is determined to have received or reviewed the COCs, notice of those documents should be deemed effective due to Honeywell's failure to exercise due diligence in "maintaining reasonable routines for communicating significant information," as required by N.Y. U.C.C. § 1-202.[7] (Doc. 90 at 18–19). New York U.C.C. Section 1-202(f) explains:

> Notice, knowledge, or a notice or notification received by an organization is effective for a particular transaction from the time it is brought to the attention of the individual conducting that transaction and, in any event, from the time it would have been brought to the individual's attention if the organization had exercised due diligence. An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines. Due diligence does not require an individual acting for the organization to communicate information unless the communication is part of the individual's regular duties or the individual has reason to know of the transaction and that transaction would be materially affected by the information.

Forged Metals asserts that it took sufficiently reasonable steps to inform Honeywell about the heat treatment status of the forgings, as evidenced by its routine business practice of sending COCs with each shipment, but that Honeywell's practice to ignore COCs violates its duty of due diligence. (Doc. 90 at 18–19; Doc. 98 at 6–7). Honeywell responds that Forged Metals has not provided actual evidence that the COCs were sent to Honeywell for the relevant shipment and has not established that Honeywell did not exercise due diligence because the contract delegated the inspection rights to Forged Metals, not to Honeywell. (Doc. 95 at 5–9). While Forged Metals points to Honeywell's failure to review the COCs and other documents as evidence of its lack of due diligence, Honeywell points to evidence that Forged Metals failed to "perform a more thorough review and inspection

---

[7] For purposes of this Order only, the Court has assumed without deciding that the U.C.C. would apply to this dispute.

for new parts" in contravention of its own policies and the relevant provisions of the contract. (Compare Doc. 98 at 8–9 with Doc. 95 at 7). This creates a disputed issue of fact as to whether Forged Metals sent the COCs at all, regardless of their evidence of routine business practice.[8]

Thus, there are disputed facts regarding (1) whether Honeywell received the COCs and (2) whether Honeywell (and Forged Metals for that matter) complied with its duties regarding the testing, certification, and discovery of the state of the forgings prior to the test compressor failure. These are questions of fact for the jury to decide. Viewed in the light most favorable to Honeywell, this Court does not find Honeywell's conduct with respect to its delegation of inspection and responsibility to identify defects to Forged Metals patently unreasonable as a matter of law.[9] A reasonable jury could find that Honeywell did not fail to exercise due diligence, even if it did receive the COCs.

### iii. Whether Honeywell's Notice to Forged Metals about its Breach of Contract and Breach of Warranty was Timely

Forged Metals argues that Honeywell did not provide reasonable notice of the alleged breach after it discovered or should have discovered the purported breach. (Doc. 90 at 19–22). Specifically, Forged Metals asserts that it put Honeywell on notice as early as late 2014 or early 2015 that the forgings were not precipitation heat treated in the COCs, and as a result, Honeywell is barred from seeking resultant damages from the test compressor failure because it did not notify Forged Metals of its alleged breach of contract until two and a half years later, in September 2017.[10] (*Id.* at 21–22). Forged Metals relies

---

[8] While Forged Metals relies on Federal Rule of Evidence 406 and *Fed. Kemper Life Assur. Co. v. Ellis*, 28 F.3d 1033 (10th Cir. 1994), neither are dispositive on this issue. Forged Metals is conflating admissibility of its routine business practices with what constitutes a disputed material fact on summary judgment. Moreover, *Fed. Kemper Life Assur. Co.* is a case regarding the interpretation of Kansas insurance contracts and the court clearly outlines a standard for insurance provider notice that is inapplicable here.

[9] In any event, as discussed above, it is not clear what Honeywell should be deemed to be on notice of because the COCs that Forged Metals is relying on have inconsistent statements within them.

[10] The Court notes, without deciding, that Forged Metals asserts that it did not receive adequate notice of the breach until it received Honeywell's demand letter on January 25,

on N.Y. U.C.C. § 2-607 and New York case law interpreting it. (*Id.* at 19–22).

NY UCC 2-607(3)(a) requires that after goods supplied under contract are accepted, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." "The sufficiency and timeliness of the notice is generally a question for the jury," unless no inference could be drawn from the evidence that the notice of breach was made within a reasonable time. *Bassaw v. United Indus. Corp.*, No. 19-CV-7759, 2020 WL 5117916, at *4 (S.D.N.Y. Aug. 31, 2020). "Whether a time for taking an action required by this act is reasonable depends on the nature, purpose, and circumstances of the action." N.Y. U.C.C. § 1-205. Additionally, the U.C.C. explains that parties may contract that an act occur within "a time that is not manifestly unreasonable." N.Y. U.C.C. § 1-302(b). What is considered a reasonable time depends on the context of a particular transaction. N.Y. U.C.C. § 1-205, Official Comment 1.[11]

As discussed above, this Court declines to find as a matter of law that Honeywell had actual knowledge or should have discovered Forged Metals's alleged breach prior to the test compressor failure because there are underlying disputed issues of material fact for the jury to decide. Even assuming that Honeywell discovered or should have discovered Forged Metals's breach of contract as early as late 2014 or early 2015, however, as Forged Metals asserts, Honeywell's notification to Forged Metals regarding its breach in September 2017 is not unreasonable as a matter of law, and thus, this too is a jury question.

Forged Metals's analogizes the present dispute to several cases, including those with

---

2019. Forged Metals admits, however, that Honeywell sent Forged Metals an email on September 15, 2017 regarding the heat treatment status of the forgings, and that viewed in the light most favorable to Honeywell, it is the earliest possible date of Honeywell's notice of breach. (*See* Doc. 90 at 21 n.3).

[11] Although Honeywell disputes the applicability of the U.C.C. in view of the contract, it is not clear from the cited portions of the contract where a reasonable time for notice of breach is fixed in the agreement. *See* N.Y. U.C.C. § 1-205(b) ("An action is taken seasonably if it is taken at or within the time agreed or, if no time is agreed, at or within a reasonable time.") Forged Metals argues that the contract is silent as to reasonable notice of breach and therefore "reasonable notice turns on the nature, purpose and circumstances in the case." (Doc. 98 at 3 (citing N.Y. U.C.C. § 1-205(a)). Regardless, the Court denies summary judgment on the reasonable notice issue because reasonableness in this case is a question of fact for the jury. Thus, the Court need not decide whether the U.C.C. or the contract governs the reasonableness standard at this time.

product defects clearly disclosed in writing or apparent from ordinary inspection. (Doc. 90 at 19–22). For example, Forged Metals argues that like the plaintiffs in *Tyman*, who should have discovered the breach of warranty by reading the back of the product packaging, Honeywell should have discovered Forged Metals's purported breach from Jeff Herda's emails and/or the COCs in late 2014 or early 2015. (Doc. 90 at 20–21); *see also Tyman v. Pfizer, Inc.*, No. 16-CV-06941, 2017 WL 6988936, at *23 n.21 (S.D.N.Y. Dec. 27, 2017). However, as discussed above, Honeywell disputes whether the COCs and the emails from Jeff Herda clearly disclose the forging heat treatment status as of delivery. (Doc. 95 at 7–9). The Court agrees that at least the COCs, which contain conflicting statements as to Forged Metals's contractual compliance, are distinguishable from the clear packaging contents at issue in *Tyman*. Honeywell also asserts that its team did conduct a variety of inspection tests on the forgings prior to installation but argues that heat treatment testing was properly delegated to Forged Metals under the contract. (Doc. 95 at 5–6).

Moreover, Honeywell explains that even after the test compressor failure in June 2017, it took its engineers months to identify the root cause of the failure. (Doc. 95 at 13). Upon discovery of the incorrect heat treatment of the forgings, Honeywell informed Forged Metals on September 15, 2017 of the defect and its resulting breach of contract and breach of warranty claims. (*Id.*) The Court cannot say that the parties' conflicting evidence leaves no inference about whether the notice was reasonable. *See Bassaw*, 2020 WL 5117916, at *4.

At its core, the parties dispute is about contract interpretation—what the contract required Forged Metals to provide to Honeywell and what responsibilities it placed on Honeywell to inspect the forgings and to notify Forged Metals of its breach. "[W]here there is a dispute over a material fact deemed necessary to a contract's interpretation, based on evidentiary support for competing interpretations, summary judgment is inappropriate." *Sicor Ltd.*, 51 F.3d at 856 (9th Cir. 1995). Accordingly, the Court DENIES summary judgment on the issue of reasonable notice of breach of contract.

## B. **Consequential Damages**

Forged Metals argues that Honeywell cannot recover consequential damages because the claimed damages could have been reasonably prevented, or in the alternative, because Honeywell cannot prove its consequential damages claim if this Court bars admission of Honeywell's damages spreadsheet into evidence. (Doc. 90 at 22–25).

### i. Whether Honeywell's Consequential Damages Could Have Been Reasonably Prevented

Forged Metals asserts two theories for its argument that Honeywell is not entitled to consequential damages based on its failure to mitigate. (Doc. 90 at 22–25). First, Forged Metals argues that Honeywell knew and was on notice that the forgings were not precipitation heat treated before it installed them in the test compressor, thereby causing its own damages. (*Id.* at 23). Second, Forged Metals contends that Honeywell failed to properly investigate unexplained vibrational data in the test compressor experiments prior to the test compressor failure, such that it could have prevented the test compressor failure. (*Id.* at 23–24). Honeywell responds that (1) its lawsuit is only seeking direct, not consequential, damages under the contract and the products suffered from latent defects; (2) Forged Metals was in a better position to discover and remedy the defects in the forgings; and (3) Honeywell's duty to mitigate did not arise prior to the test compressor failure because Honeywell did not have actual knowledge of Forged Metals's breach. (Doc. 95 at 19–20). Forged Metals responds that all but $100,000 of the 4.7 million dollars in Honeywell's claimed damages are consequential, not direct, and even if the contract provides for Honeywell to recover these damages, Honeywell is not absolved of its duty to mitigate. (Doc. 98 at 13–14).

Under N.Y. U.C.C. § 2-715(2), a seller's breach can result in consequential damages, including "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and injury to person or property resulting from any breach of warranty." It is well established that under this provision and the common law, the nonbreaching party in a breach of contract action has a duty to mitigate

its damages. *Simeone v. First Bank Nat'l Assoc.*, 73 F.3d 184, 188–89 (8th Cir. 1996). Once a party is on notice of a defective product or breach of contract, the injured party cannot recover consequential damages resulting from the continued use of that product, as any resulting damages could have been reasonably be prevented. *Knapp Shoes, Inc. v. Sylvania Show Mfg. Corp.*, 72 F.3d 190, 204 (1st Cir. 1995). However, plaintiffs are "not required to take steps in mitigation that should have been taken by the breaching defendant." *Korea Life Ins. Co., Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 99 Civ. 12175 (AKH), 2004 WL 1858314, at *8 (S.D.N.Y. Aug. 20, 2004).

The U.C.C. also gives buyers the ability to recover damages resulting from the "ordinary course of events" following a seller's breach. N.Y. U.C.C. § 2-714(1). An "agreement may provide for remedies in addition to or in substitution for those in [the U.C.C.] and may limit or alter the measure of damages recoverable." *Id.* § 2-719(1)(a). Although, "[t]he obligations of good faith, diligence, reasonableness, and care prescribed by [the U.C.C.] may not be disclaimed by agreement." *Id.* § 1-302.

Forged Metals's first argument is based on its fundamental assertion that Honeywell knew or should have known that the forgings were not precipitation heat treated prior to installation into the test compressor. As discussed above, however, this is a disputed issue of fact, and both parties have provided conflicting evidence to support their respective positions. Additionally, when Honeywell's duty to mitigate arose based on that knowledge is necessarily a question of fact as well. Forged Metals's second argument is equally flawed, as it requires this Court to determine an issue of fact—namely, whether the Honeywell engineers acted reasonably under the circumstances in continuing the testing in view of the aberrant vibrational data.

Honeywell's arguments that it never had a duty to mitigate its damages is unavailing. While the parties may have contracted for damages resulting from the immediate fallout of the test compressor failure, Honeywell does not cite any authority supporting its assertion that it can contract around its duty to mitigate damages in

perpetuity.[12] At some point, Honeywell's duty to mitigate arose, when the foreseeable contract time period came to a close. At that time, which is unknown and based on materially disputed facts regarding Honeywell's actual or imputed knowledge, the reasonably foreseeable damages in the contract would convert to consequential damages that Honeywell would have a duty to mitigate.

Therefore, the Court DENIES summary judgment as to Honeywell's ability to seek its damages as consequential damages or otherwise.

### ii.   Forged Metals's Motion in Limine to Exclude Plaintiff's Damages Spreadsheet and Related Evidence

As discussed above, Forged Metals seeks to bar Honeywell from presenting its consequential damages evidence at trial because, in its view, Honeywell has not produced underlying documents to support a previously produced damages spreadsheet that outlines its consequential damages claim. (Doc. 90 at 24–25). As explained above in part III, the Court denies the Motion in Limine, and thus too declines to grant summary judgment as to the availability of Honeywell's damages claim on the same basis.

### C. <u>Honeywell's Alleged Waiver Of Breach of Contract and Warranty Claims</u>

Finally, Forged Metals seeks a judgment that Honeywell waived its breach of contract and breach of warranty claims based on Forged Metals's assertions that (1) Honeywell had actual knowledge and notice of the forging's treatment condition prior to incorporating those forgings into the test compressor, and (2) Honeywell did not issue a Corrective Action Report against Forged Metals after discovering the defective forgings. (Doc. 90 at 25–26).

To waive a contractual right, a party must engage in an act that demonstrates an intention to voluntarily abandon or relinquish its rights to sue. *Jefpaul Garage Corp. v.*

---

[12] For example, the contract states that "[s]upplier is responsible for all related costs, expenses, penalties, and damages arising out of or related to" the nonconforming goods. (Doc. 95 at 18 (citing GPOPs at § 9.2)). Arguably, then, this broad language would cover a Honeywell employee that falls and suffers injuries at the test compressor failure site prior to its cleanup. Regardless of what damages are provided in the contract, it cannot be true that Honeywell did not have a duty to mitigate those potentially unforeseeable tort damages if Honeywell neglected to clean up the accident for ten years.

*Presbyterian Hosp.*, 462 N.E.2d 1176, 1177 (N.Y. 1984); *see also Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, Inc., 448 F.3d 573, 585 (2d Cir. 2006). "[M]ere silence, oversight or thoughtlessness" is not enough to find waiver—there must be a clear manifestation of a party's intent to give up a known right. *Beth Israel Med. Ctr.*, 448 F.3d at 585. In some instances, a failure to act can be evidence of waiver, such as when a party accepts contractual performance with knowledge of the performing party's breach of contract. *See Ed Kimber Heating and Cooling, Inc. v. Travelers Cas. And Sur. Co.*, 411 F. Supp. 111, 116–17 (D. Conn. 2006) (applying New York law). However, a party's intent to waive a legal right is usually considered a question of fact for the jury. *Beth Israel*, 448 F.3d at 585.

First, Forged Metals argues that despite having notice and actual knowledge from the information contained in the COCs that the forgings had not been precipitation treated and therefore Forged Metals was in breach, Honeywell incorporated the forgings into the test compressor anyways, which constitutes a waiver of Honeywell's right to sue Forged Metals for breach of contract. (Doc. 90 at 25). However, Honeywell disputes both (1) receipt of the COCs and (2) what those COCs state regarding the heat treatment applied to the forgings. (Doc. 95 at 7–8, 15). The Court finds that there is a genuine dispute of material fact, as discussed above in III.A, as to whether Honeywell had actual knowledge or notice of Forged Metals's alleged breach of contract and when Honeywell obtained that actual knowledge or notice. As such, the Court cannot decide whether Honeywell waived its legal right to sue Forged Metals for breach of contract on summary judgment, without evidence of Honeywell's clear intention to waive its right to sue Forged Metals for breach of contract. *Beth Israel*, 448 F.3d at 585.

Second, Forged Metals has not cited any authority for its assertion that failure to issue a Corrective Action Report (CAR) constitutes a clear waiver of its legal right to bring a breach of contract claim against the seller of defective or nonconforming goods. (Doc. 90 at 25–26). While Forged Metals argues that CARs are mandated by industry practice and allow buyers to identify a supplier's mistake (Doc. 98 at 16), Honeywell, also

knowledgeable about industry practice, disagrees (Doc. 95 at 21). Because the law requires a clear manifestation of a party's intention to waive legal rights, the Court declines to find such a waiver here without evidence that not issuing a CAR shows Honeywell intended not to sue Forged Metals for breach. *Beth Israel*, 448 F.3d at 585.

Accordingly, the Court DENIES Forged Metals's Motion for Summary Judgment on the issue of Honeywell's waiver.

## VI.   HONEYWELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON FORGED METALS'S AFFIRMATIVE DEFENSES

Honeywell seeks to preclude Forged Metals from asserting its affirmative defenses of mitigation, waiver, and estoppel.

### A.   <u>Mitigation</u>

Honeywell seeks a partial summary judgment ruling precluding Forged Metals from asserting an affirmative defense at trial that Honeywell had a duty to mitigate its damages and failed to do so. (Doc. 91 at 7–8). Honeywell puts forth three reasons why it is entitled to summary judgment on this issue: (1) Honeywell did not have a duty to mitigate because Forged Metals had the same, if not a better, opportunity to prevent the damages; (2) Honeywell's duty to mitigate did not arise until after it had actual knowledge of the breach after the test compressor failed; and (3) the duty to mitigate does not apply, because Honeywell is not seeking any consequential damages. (*Id.*) In response, Forged Metals argues that it is entitled to an affirmative defense of mitigation based on Honeywell's knowledge of the forgings heat treatment status prior to the test compressor failure, Honeywell's duty to inspect the forgings and COCs prior to installation under the U.C.C., and the damages Honeywell seeks are plainly consequential such that a duty to mitigate damages arose when Honeywell had reason to know of the defect. (Doc. 96 at 7–17). Each of these arguments was considered and discussed above in part V.B regarding Forged Metals's Motion for Summary Judgment. As discussed therein, Forged Metals affirmative defense regarding Honeywell's duty to mitigate is based on questions of material fact that are jury questions.

Accordingly, the Court similarly DENIES Honeywell's Motion for Partial Summary Judgment on the issue of Forged Metals's affirmative defense of mitigation.

### B. Waiver

Honeywell asserts that as a matter of law, Forged Metals cannot raise an affirmative defense that Honeywell voluntarily relinquished its right to sue Forged Metals. (Doc. 91 at 16). Forged Metals disagrees, arguing that Honeywell's choices (1) to incorporate the forgings into the test compressor after it had actual knowledge and notice of the forgings heat treatment and (2) not to issue a CAR evidence Honeywell's intention to waive its breach of contract claim against Forged Metals. (Doc. 96 at 17–18).

As discussed above regarding Forged Metals's Motion for Summary Judgment on the issue of Honeywell's alleged waiver in part III.C, there is a dispute of material fact as to whether Honeywell waived its claims based on whether Honeywell had actual knowledge or notice of Forged Metals's alleged breach of contract prior to incorporating the forgings into the test compressor. Also, as discussed above in part III.C, the Court declines to find that Forged Metals has no basis for its waiver claim without undisputed evidence regarding the mandatory nature (or not) of the CAR process. The Court cannot determine that Forged Metals has no affirmative defense of waiver on these issues on summary judgment.

Accordingly, the Court DENIES Honeywell's Motion for Partial Summary Judgment as to Forged Metals's affirmative defense of waiver.

### C. Estoppel

Honeywell asks this Court to grant summary judgment to preclude Forged Metals from relying on its estoppel defense on the merits (Doc. 91 at 17) and as a result of waiver (Doc. 99 at 12). The Court will address to issue of waiver first.

#### i. Forged Metals's Waiver of Its Estoppel Defense

In its Answer, Forged Metals asserts that Honeywell should be estopped from arguing that Forged Metals should have supplied precipitation treated forgings because Honeywell had knowledge of the forgings' heat treatment status since late 2014 or early

2015 and never complained to Forged Metals or otherwise asked Forged Metals to precipitation treat the forgings. (Doc. 26 at 6, ¶ 46). Honeywell's knowledge, according to Forged Metals, arose because "Forged Metals repeatedly advised Honeywell that the forgings supplied by Forged Metals were delivered in a 'solution heat treated' condition." (*Id.*). In its First Supplemental Mandatory Initial Disclosures, Forged Metals elaborated on its estoppel theory, stating:

> Even if the contract called for Forged Metals to supply forgings in a "precipitation heat treated" condition, in 2014 and 2015 ***and upon delivery of each forging***, Forged Metals notified Honeywell in the Certificates of Conformance, Certifications, and e-mails that forgings supplied were "solution" heat treated and were not "aged." It also reiterated this information in emails and calls in 2017. ***Because it knew or should have known or discovered that the forgings were supplied in the solution heat treated condition when it accepted and did not reject the forgings,*** Honeywell waived any right to complain about the condition of the forging and/or is estopped from complaining about the condition of the forgings.

(Doc. 95-1 at 63) (emphasis in original).

In its Response to Honeywell's Motion for Partial Summary Judgment, Forged Metals further clarifies that it relied on Honeywell's representations in the January 2015 email from Brian Streich that it was up to "the vendor" to determine whether to precipitation treat the forgings when it decided not to do so, ultimately leading to this dispute. (Doc. 96 at 18, referencing Doc. 90-7 at 2). As a result, Forged Metals contends that Honeywell should be estopped from being able to claim that Forged Metals should have precipitation treated the forgings under the contract. (*Id.*)

In its reply, Honeywell argues that Forged Metals changed its estoppel theory from detrimental reliance on Honeywell's acceptance of the forgings to detrimental reliance on Honeywell's email communications prior to delivery of the forgings. Thus, according to Honeywell, any estoppel theory based on the pre-delivery emails is waived because Forged Metals did not assert it. (Doc. 99 at 11–12). Indeed, in its Answer and First Supplemental Mandatory Initial Disclosures, Forged Metals appears to base its estoppel argument on Honeywell's alleged knowledge of the actual heat treatment status of the forgings upon

delivery. (Doc. 26 at 6, ¶ 46; Doc. 95-1 at 44–46). For the first time in its Response, Forged Metals asserts that Honeywell told Forged Metals not to precipitation treat the forgings and that is why Forged Metals did not do so. (Doc. 96 at 18). It is unclear to the Court whether Forged Metals is making two distinct estoppel arguments here. Regardless, without a showing that Honeywell has suffered any prejudice, "an affirmative defense may be raised for the first time at summary judgment." *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993). Honeywell does not claim prejudice in its pleadings, nor is any apparent from the record. Thus, the Court finds that Forged Metals has not waived its estoppel argument based on the email communications between the parties, to the extent it is separate and distinct from the estoppel argument set out in its Answer and discovery responses.

### ii. Merits of Forged Metals's Estoppel Defense

Regarding the merits of Forged Metals's estoppel defense, Honeywell seeks to preclude Forged Metals from raising its estoppel defense because Forged Metals has not proved (1) that it detrimentally relied on Honeywell's acceptance of the nonconforming forgings (Doc. 91 at 17) nor (2) that Honeywell knowingly misrepresented a material fact to Forged Metals (Doc. 99 at 12).

A defense of equitable estoppel under New York law requires proof of three elements with respect to the estopped party: "(1) conduct which amounts to false representation or concealment of material facts, (2) the intention or reasonable expectation that such conduct will be relied upon by the other party, and (3) knowledge, actual or constructive, of the real facts." *Kromer v. Kromer*, 575 N.Y.S.2d 904, 907 (N.Y. App. Div. 1991). Additionally, the party asserting an estoppel defense must show "(1) reliance on the other's conduct, and (2) that in reliance thereon, he or she changed position to his or her prejudice." *Id.*; *see also In re Ellison Associates*, 63 B.R. 756, 764 (S.D.N.Y. 1983) ("The equitable estoppel doctrine embodies the principle that one who, by his words or actions, represents a certain state of facts to be true and thereby induces another to act to his detriment should be thereafter precluded from denying the existence of such a state of facts.").

- 27 -

Contrary to Honeywell's recitation of the law, a false representation or concealment of material facts required to establish estoppel under New York law does not require a "knowing" element, and Honeywell cites no supporting authority for its position that its misrepresentation must be done with knowledge. Instead, the cases cited by Honeywell are all silent on this point, except for *Kosakow*. Although that case is interpreting the federal requirements for equitable estoppel, it states that "estoppel is appropriate even where 'the one making the representation believes that his statement is true,' and, moreover, 'it is immaterial whether the person making the representation exercised due care in making the statement.'" *Kosakow v. New Rochelle Radiology Assoc.*, 274 F.3d 706, 726 (2d. Cir. 2001) (*citing* Restatement (Second) of Torts, § 894(1), cmt. b).

In response, Forged Metals cites to the *Gildor* case to support its position that Honeywell should be estopped. (Doc. 96 at 18). However, the *Gildor* case is focused on a party's ability to assert an estoppel claim *against the federal government*, and the court there notes a different estoppel standard for lawsuits against the government. *Gildor v. U.S. Postal Service*, 491 F. Supp. 2d 305, 308–09 (N.D.N.Y. 2007). Thus, Forged Metals reliance on the *Gildor* case is misplaced, and Forged Metals cites no authority to support its position that this Court deny summary judgment.

However, Forged Metals's estoppel claim is based on the interpretation of an email exchange between Honeywell and Forged Metals regarding the required heat treatment for the forgings. (Doc. 96 at 18). As discussed above, in part V.A.ii.a, there is a disputed issue of material fact about the correct interpretation of those emails regarding the forging's heat treatment status. As a result, Forged Metals's estoppel argument appears to center on what the Honeywell engineers meant in their emails by stating that the order of heat treatments was up to "the vendor" (Doc. 90-7 at 3), and there is clearly a dispute of material fact as to what the Honeywell engineers were attempting to communicate in their emails and how Forged Metals interpreted those emails.

Because it cannot be said that these factual issues, if resolved in Forged Metals's favor, would nonetheless fail as a matter of law to constitute an affirmative defense to

Honeywell's breach of contract action, summary judgment should not be granted. *See Nassau Trust Co. v. Montrose Concrete Products Corp.*, 56 N.Y.2d 175, 183 (N.Y. Ct. App. 1982).

Accordingly, the Court DENIES summary judgment precluding Forged Metals from presenting estoppel as an affirmative defense at trial.

## VII.    CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Forged Metals's Motion for Summary Judgment (Doc. 90) is DENIED in its entirety.

**IT IS FURTHER ORDERED** that Honeywell's Motion for Partial Summary Judgment (Doc. 91) is DENIED in its entirety.

**IT IS FURTHER ORDERED** that Forged Metals's Motion in Limine To Exclude Plaintiff's Damages Spreadsheet and Related Evidence (Doc. 89) is DENIED.

Dated this 27th day of September, 2021.

James A. Teilborg
Senior United States District Judge